# United States Court of Appeals
## For the First Circuit

No. 13-1896

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN OMAR ALMONTE-NUÑEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Selya and Stahl,
Circuit Judges.

Heather Golias, with whom Law Office of Heather Golias was on brief, for appellant.
John A. Mathews II, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

November 14, 2014

**SELYA, <u>Circuit Judge</u>.** When the government enters into a plea agreement with a criminal defendant, it acquires a duty to carry out the obligations it has undertaken in both letter and spirit. This duty devolves upon the government's attorneys. But those attorneys, as officers of the court, remain bound by their corollary duty to provide full and accurate information about the offense and the offender to the sentencing court. As this case illustrates, these dual obligations sometimes require prosecutors to walk a fine line.

## I. BACKGROUND

We draw the facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing. <u>See</u> <u>United States v. Fernández-Cabrera</u>, 625 F.3d 48, 50 (1st Cir. 2010).

Early on the morning of September 30, 2011, Puerto Rico police officers pursued a car in Caparra Heights. The car careened into a pole and defendant-appellant Edwin Omar Almonte-Nuñez was observed clambering out of the wreck. The defendant threw a pistol on the floor as he went. He and a passenger were arrested.

There had been a robbery in the neighborhood, leaving an injured victim behind. During a search incident to arrest, some of the victim's property (including her passport) was found in the suspects' possession.

The defendant admitted participating in the robbery.  He further admitted using the pistol to strike the victim, a 78-year-old widow.  The victim explained in a sworn statement that the defendant had placed the pistol to her forehead, threatened to shoot her, twice struck her in the face with the pistol, and restrained her against a wall.  The victim suffered grievous injuries, including the loss of her right eye.

A federal grand jury subsequently returned a superseding indictment that charged the defendant in pertinent part with robbing an individual of a United States passport in violation of 18 U.S.C. § 2112 (count 1), brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count 2), and being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count 3).  After initially maintaining his innocence, the defendant executed a plea agreement (the Agreement) and entered guilty pleas to all counts.  See Fed. R. Crim. P. 11(c)(1)(B).

In the Agreement, the government and the defendant agreed to a series of guideline calculations, culminating in a total offense level of 25.  The parties pledged that neither of them would argue for any further offense-level adjustments.  The defendant's criminal history category (CHC) was left open and, thus, his guideline sentencing range (GSR) was undetermined.  Nevertheless, the Agreement allowed the defendant to argue for

sentences on counts 1 and 3 at the low end of whatever GSR emerged and allowed the government to argue for high-end sentences on those counts. With respect to count 2, the parties jointly agreed to advocate an 84-month sentence (to run consecutive to whatever sentences the court imposed on the other counts).

The Agreement made clear that these sentencing recommendations were not binding on the district court. To guard against the possibility that the court might reject the proposed calculations, the defendant agreed to waive his right to appeal only if he was "sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions" of the Agreement.

We fast forward to March 14, 2013, when the probation department submitted an amended PSI Report. This version contained certain information not included in the Agreement's stipulated facts. Pertinently, the PSI Report noted that the victim had been threatened with death and restrained during the robbery. With this in mind, the PSI Report suggested that the defendant's total offense level should be 29 (not 25). See USSG §2B3.1(b)(2)(F) (providing two-level enhancement for threat of death); id. §2B3.1(b)(4)(B) (providing two-level enhancement for restraining victim). It further recommended that the defendant be placed in the highest available CHC: VI.

-4-

At a sentencing conference held on April 16, 2013, two noteworthy developments occurred. First, the court related its inclination to adopt the two new enhancements proposed in the PSI Report. Second, the court stated that it regarded the parties' sentencing recommendation on counts 1 and 3 as too lenient.

The disposition hearing convened on June 14, 2013. The defendant did not object to the appropriateness of CHC VI. He did, however, object to the threat-of-death adjustment, arguing that this enhancement would constitute double counting in light of the charge limned in count 2. The Assistant U.S. Attorney (AUSA) agreed that a threat-of-death adjustment would constitute double counting. The court acquiesced, and that proposed adjustment dropped out of the case.

The court followed up by asking the AUSA whether the proposed restraint adjustment would be double counting. She replied that it would not. The defendant did not challenge the accuracy of this response but nonetheless beseeched the court to use the total offense level adumbrated in the Agreement (25). Later in the proceeding, the defendant objected to inclusion of the restraint adjustment, maintaining that the government had not mentioned that element in the plea negotiations and that, in all events, there was insufficient evidence to justify a finding that the victim had been restrained. The AUSA rejoined that the government had provided full discovery and that the victim impact

statement furnished a factual basis for the two-level restraint enhancement. At the same time, however, the AUSA assured the court that the government stood by the sentencing recommendations delineated in the Agreement.

This exchange concluded with the court advising the parties that it was inclined to incorporate the restraint enhancement into the offense-level calculation. Doing so would boost the defendant's offense level to 27, resulting in a GSR of 130 to 162 months.

The court then heard arguments about what sentence to impose. The defendant's lawyer argued that, if the court used an offense level of 27, it should impose a bottom-of-the-range 130-month sentence on counts 1 and 3. While the AUSA reiterated that the government stood by the Agreement and its sentencing recommendations, she referenced the seriousness of the offenses, the various aggravating factors, and the need for deterrence. When the court made clear that the higher GSR would apply, the AUSA recommended 137-month sentences on counts 1 and 3. Not coincidentally, 137 months represented the high end of the GSR that would have applied if the court had stuck with an offense level of 25. The court continued to press the AUSA about the restraint enhancement, whereupon the AUSA repeated that there was a factual basis for the enhancement but asked the court to impose a sentence in accordance with the Agreement's sentence recommendation

provisions (in other words, a sentence premised on an offense level of 25).

The rest is history. The court applied the restraint enhancement and set the defendant's total offense level at 27. The GSR for counts 1 and 3 thus became 130 to 162 months. The court sentenced the defendant to concurrent 150-month incarcerative terms on those counts, to be followed by the agreed 84-month incarcerative term on count 2. This timely appeal followed.

## II. ANALYSIS

In this venue, the defendant presses two claims of error. First, he says that the government breached the Agreement and that, therefore, he should be resentenced before a different judge. Second, he says that the 150-month sentence on count 3 must be vacated because it exceeds the statutory maximum for that count.

There is, however, a threshold issue: the government contends that the waiver-of-appeal clause contained in the Agreement bars our review of the defendant's claims of error. We start there.

### A. Appeal Waiver.

It is black-letter law that a criminal defendant may waive his right to appeal. See United States v. Teeter, 257 F.3d 14, 23 (1st Cir. 2001). We will enforce such a waiver as long as "the defendant knowingly and voluntarily agreed to its terms and enforcement would not result in miscarriage of justice." United

States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007) (citing Teeter, 257 F.3d at 24-26).

Of course, a waiver of appeal precludes only those appeals that fall within its scope. See Fernández-Cabrera, 625 F.3d at 51; McCoy, 508 F.3d at 77. In determining whether an appeal is within the scope of a waiver provision, we interpret a plea agreement according to traditional contract-law principles. See United States v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013). Here, the terms of the waiver-of-appeal clause are unequivocal: the defendant is foreclosed from appealing only if he was "sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions" of the Agreement.

As to counts 1 and 3, the sentence recommendation provisions contemplated a total offense level of 25 (with no further offense-level adjustments) and a sentence within the ensuing GSR. Thus, for the defendant to have been sentenced in accordance with the terms of the sentence recommendation provisions, he would have had to be sentenced within a GSR derived from an offense level of 25. Such a GSR, even at the highest possible CHC (VI), tops out at 137 months. See USSG Ch.5, Pt.A, sentencing table. The defendant's 150-month sentences on counts 1 and 3 were above this ceiling. It follows, as night follows day, that the sentences imposed on counts 1 and 3 were not in conformity with the Agreement's sentence recommendation provisions.

-8-

Consequently, the waiver-of-appeal clause does not pretermit appellate review. See, e.g., Murphy-Cordero, 715 F.3d at 400.

The government resists this conclusion. It asseverates that the defendant was sentenced in conformance with the sentence recommendation provisions because those provisions did not lock in a particular GSR and the Agreement otherwise informed the defendant that the district court retained ultimate sentencing discretion. This is anfractuous reasoning, and we reject it.

We interpret a plea agreement as a whole and strive to give effect to all of its terms. See United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013). Here, the Agreement unambiguously set the offense level at 25 and barred arguments in favor of further adjustments. That the Agreement informed the defendant that the district court retained ultimate sentencing discretion does not eviscerate these commitments.[1] The waiver-of-appeal clause is, therefore, a dead letter.

## B. Purported Breach.

We turn next to the defendant's claim that the government failed to abide by the Agreement. Whether the government breached the terms of a plea agreement is usually a question of law, which

---

[1] With minimal effort, the government could have drafted a waiver clause having the effect that it unrealistically ascribes to the language actually used in the Agreement. See United States v. Isom, 580 F.3d 43, 51 (1st Cir. 2009) (considering waiver provision that applied "if the sentence imposed by the Court is within the guideline range determined by the Court or lower." (emphasis supplied) (internal quotation mark omitted)).

we review de novo.  See United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995).  But where, as here, the defendant fails to object to the purported breach before the district court, review is only for plain error.  See Puckett v. United States, 556 U.S. 129, 143 (2009); United States v. Rivera-Rodríquez, 489 F.3d 48, 57 (1st Cir. 2007).

The path of plain-error review is well traveled.  The appellant must shoulder the burden of showing "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); accord United States v. Olano, 507 U.S. 725, 732 (1993).  Within this taxonomy, an error is deemed to affect substantial rights when it likely affected the outcome of the proceedings.  See Puckett, 556 U.S. at 135.

The government perplexingly concedes that it breached the Agreement's prohibition against supporting further adjustments by advising the court that the record contained a factual basis for the restraint adjustment.  A federal court in a criminal case is not obliged to accept the government's confession of error, see United States v. Mescual-Cruz, 387 F.3d 1, 8 n.2 (1st Cir. 2004), and we decline to do so here.  Our cases make pellucid that the AUSA was under an unflagging duty, as an officer of the court, to

-10-

provide this accurate factual information to the sentencing judge once the judge had raised the issue. See United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004). Because the AUSA's statements did no more than fulfill this duty, they could not constitute a breach of the Agreement. We explain briefly.

A defendant who enters a plea agreement waives a panoply of constitutional rights and, therefore, we hold prosecutors to "the most meticulous standards of both promise and performance." United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002) (internal quotation marks omitted); see Clark, 55 F.3d at 12. Such standards require more than lip service to, or technical compliance with, the terms of a plea agreement. See Rivera-Rodríguez, 489 F.3d at 57; United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000).

However, this principle does not operate in a vacuum. We repeatedly have emphasized that prosecutors have a concurrent and equally solemn obligation to provide relevant information to the sentencing court and that a plea agreement may not abridge that obligation. See, e.g., Gonczy, 357 F.3d at 53; Saxena, 229 F.3d at 6; see also United States v. Canada, 960 F.2d 263, 270 n.7 (1st Cir. 1992) ("It is necessary at all times that the government 'level' with the court as to the correct facts and calculations relevant to guideline sentencing.").

In this instance, the Agreement obligated the government "to refrain from arguing further guideline adjustments" to an

-11-

offense level of 25.  But there is a material difference between answering questions asked by a sentencing court or bringing facts to the court's attention and affirmatively supporting an adjustment.  See Clark, 55 F.3d at 13.  The AUSA's statements here plainly were made in response to the district court's inquiry and to correct what the AUSA reasonably viewed as a misstatement of fact by defense counsel.  Seen in this light, those statements did not cross the line into forbidden terrain: supporting an enhancement entails an element of advocacy, and there was no such advocacy by the prosecutor here.  See Saxena, 229 F.3d at 7-8.

It is equally plain that the AUSA's substantive sentencing argument did not transgress the Agreement.  The AUSA made the following argument:

> Considering all of the facts and in this case we are talking about a defenseless female, 70 year old woman, attacked in a way that nobody should have to face a situation like this. When she is sleeping, in a vulnerable state, the way it happened and the vicious way that he committed the crime, when he assaulted her with no provocation on her part.  The fact that she suffered severe bodily injury, she lost her right eye, and to this day she has almost lost her eyesight.  She is basically blind at this point.  She needs the continued help of her family.
>
> . . . .
>
> We stand by the plea agreement and in a sense we have to recommend to the Court the higher end of the guideline, not the lower end.  That is considering the defendants [sic] background, all [section] 3553 factors and the need to protect the community from future

crimes of this defendant and send a message
that crimes like this will not be tolerated.

. . . .

We are standing by the plea agreement with the
guidelines negotiated by the parties.

Following additional questioning from the court concerning the
restraint adjustment, the AUSA reiterated that the government
intended to adhere to the Agreement and twice recommended a 137-
month sentence. This sentencing recommendation tracked the
Agreement, which expressly permitted the government to seek a
sentence at the high end of the applicable GSR based on offense
level 25.

The defendant has a fallback position. He insists that
the AUSA's conduct, taken as a whole, conveyed the government's
tacit support for the restraint adjustment. A fair reading of the
transcript of the disposition hearing belies the defendant's
tendencious characterization. At no time did the AUSA advocate in
favor of the newly emergent restraint adjustment. To the contrary,
she repeatedly asserted that the government stood by the Agreement.

To be sure, it is possible for a prosecutor to undercut
a plea agreement while paying lip service to its covenants. Our
decision in Clark illustrates this point. There, we found a breach
of the plea agreement when the government, without formally
opposing a downward adjustment that it had agreed not to oppose,

-13-

made it clear that it regarded the adjustment as inappropriate. See 55 F.3d at 12.

We consider the totality of the circumstances in determining whether a prosecutor engaged in impermissible tactics. See, e.g., Gonczy, 357 F.3d at 53-54; Saxena, 229 F.3d at 6-7. Here, there is no basis for concluding that the prosecutor reaffirmed a promise to the defendant out of one side of her mouth and tried to subvert it out of the other side. The AUSA said nothing that could reasonably be construed as an indication that she supported the restraint adjustment. No more is exigible: the AUSA was not required to be effusive in refusing to support the adjustment. Cf. Canada, 960 F.2d at 270 (explaining that a prosecutor is not obliged to present an agreed representation "with any particular degree of enthusiasm").

In a final effort to save a sinking ship, the defendant suggests that there is more to the AUSA's argument than meets the eye. He says that, peeking beneath the surface of the recommendation, the AUSA insinuated that she was touting an overly lenient sentence only because she was precluded from arguing for a stiffer one. In particular, the defendant complains that the AUSA "highlighted the vulnerable nature of the complainant and the impact on her daily life." He adds that the court's earlier

characterization of the recommended sentence as too lenient should have put the government on notice of the need to tread lightly.[2]

This plaint leads nowhere. The Agreement allowed the prosecutor to seek the upper end of the GSR contemplated by the Agreement, and the AUSA was within fair territory in emphasizing facts that made a sentence at the low end of that GSR inappropriate. See Rivera-Rodríguez, 489 F.3d at 58. The defendant admitted to committing a heinous crime resulting in horrific injuries, and nothing contained in the Agreement entitled him to have the government sugarcoat the facts.

To say more on this point would be to paint the lily. Holding steady and true the delicate balance between the AUSA's dual obligations and considering the totality of the circumstances, no breach of the Agreement is evident.

### C. **Count 3 Sentence**.

The defendant's remaining claim of error targets his sentence on the firearm possession charge (count 3). His thesis is that the sentence imposed must be vacated because it exceeds the statutory maximum. Inasmuch as this claim is raised for the first

---

[2] The defendant likewise laments that the AUSA referenced certain facts not otherwise before the court concerning the defendant's involvement of his common-law partner's son in the robbery. While this reference may have been overzealous, it was not objected to and, in all events, this aspect of the government's advocacy in no way communicated support for a sentence beyond the upper range of 137 months, fully in line with the Agreement.

-15-

time on appeal, our review is for plain error.  See Duarte, 246 F.3d at 60.

The statute of conviction for count 3 is 18 U.S.C. § 922(g)(1).  The maximum sentence authorized by Congress for a violation of this statute is 10 years (120 months).  See 18 U.S.C. § 924(a)(2).  In this case, count 3 was grouped with count 1 for purposes of calculating the applicable offense level.  See USSG §3D1.2(a).  The court warrantably determined that the GSR was 130 to 162 months and then imposed a 150-month concurrent sentence on each of the two grouped counts.

With respect to count 3, this sentence constituted clear and obvious error.  Guideline calculations simply cannot usurp a maximum level of imprisonment established by Congress.  See United States v. Saccoccia, 58 F.3d 754, 786 (1st Cir. 1995).  Nor does grouping by some mysterious alchemy blend the maximum penalties for each of the grouped counts.  See USSG §5G1.2, comment. (n.1) (explaining that when a defendant is sentenced for multiple convictions, the separate statutory maximums limit each sentence).  Consequently, the 150-month sentence on count 3 is above the maximum sentence permitted by law.

Notwithstanding this manifest error, the government argues that resentencing is unwarranted because the incorrect sentence did not affect the defendant's substantial rights and, therefore, did not amount to plain error.  This argument is

premised on the defendant's identical and concurrent 150-month sentence on count 1.

We have not adopted a uniform rule about whether, without a preserved claim of error, a defendant who is sentenced to a term of imprisonment in excess of a statutory maximum is entitled to relief even though his overall period of immurement will not be affected. Compare, e.g., United States v. Matos, 611 F.3d 31, 36 (1st Cir. 2010) (denying relief), with United States v. García-Ortiz, 528 F.3d 74, 84-85 (1st Cir. 2008) (granting relief). Although particular cases may differ, flexibility exists and, under normal circumstances, our discretion should be exercised in favor of trimming back an excessive sentence. Our reasoning follows.

To begin, in an appropriate case, leaving intact a sentence that exceeds a congressionally mandated limit may sully the public's perception of the fairness of the proceeding. That perception, in turn, may threaten respect for the courts and may impair their reputation.

From the defendant's standpoint, collateral consequences may arise as a result of an above-the-maximum sentence imposed on a particular count. The existence and extent of these collateral consequences are notoriously difficult to predict, but they have the potential to harm the defendant in a myriad of ways. See United States v. Bossany, 678 F.3d 603, 606-07 (8th Cir. 2012) (recognizing that "mere presence of an excessive sentence in a

defendant's record has the potential of causing prejudice").  It strikes us as both unwise and unfair to place the risk of such harm on the defendant where, as here, the excessive sentence is easy to correct.  See United States v. Kincaid, 898 F.2d 110, 112 (9th Cir. 1990) (refusing to place risk of future prejudice flowing from erroneous sentence on defendant).

In the last analysis, correcting such an error will rarely tax judicial resources and may (depending on what an uncertain future brings) provide some small benefit to the defendant.  When (as in this case) there are no countervailing circumstances, we believe that the interests of justice ordinarily will tip the scales in favor of relief.

That ends this aspect of the matter.  Because the sentence on the firearm possession charge (count 3) exceeds the statutory maximum, we direct the district court, on remand, to enter a modified sentence of 120 months on that count.  See United States v. Barnes, 251 F.3d 251, 261 (1st Cir. 2001).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the defendant's sentence on counts 1 and 2, but order the court below to enter a modified sentence on count 3.


**So Ordered.**