# United States Court of Appeals
## For the First Circuit

Nos. 21-1002, 22-1154

BOSTON EXECUTIVE HELICOPTERS, LLC,

Plaintiff, Appellant,

v.

FRANCIS T. MAGUIRE, individually and in his capacity as manager
of the Norwood Memorial Airport; MARK P. RYAN, individually and
in his capacity as a clerk of the Norwood Airport Commission;
MARTIN E. ODSTRCHEL, individually and in his capacity as a
member of the Norwood Airport Commission; KEVIN J. SHAUGHNESSY,
individually and in his capacity as a clerk of the Norwood
Airport Commission; MICHAEL SHEEHAN, individually and in his
capacity as a member of the Norwood Airport Commission; LESLIE
W. LEBLANC, in his capacity as a member of the Norwood Airport
Commission; PAUL V. SHAUGHNESSY, in his capacity as a member of
the Norwood Airport Commission; HYLIE HUTCHENS, in his capacity
as a member of the Norwood Airport Commission; NORWOOD AIRPORT
COMMISSION; THOMAS J. WYNNE, individually and in his capacity as
former chairman of the Norwood Airport Commission; NORWOOD
MEMORIAL AIRPORT; TOWN OF NORWOOD,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Eric H. Loeffler, with whom Davids & Cohen, P.C. was on brief,

for appellant.

David S. Mackey, with whom Mina S. Makarious, Jonathan T. Elder, and Anderson & Kreiger LLP were on brief, for appellees.

August 15, 2022

**KAYATTA**, **Circuit Judge**.    This appeal represents the latest bout in an acrimonious quarrel between Boston Executive Helicopters (BEH) and the Town of Norwood, which runs the Norwood Memorial Airport (collectively, "Norwood").    BEH sued Norwood in 2015, contending that Norwood and one of BEH's competitors, FlightLevel, conspired to prevent BEH from becoming a Fixed Base Operator at the airport.    The parties resolved their dispute -- albeit temporarily -- by entering into a written settlement agreement in July 2019.    Dissatisfied with Norwood's performance under the settlement agreement, BEH moved the district court to enforce the agreement as construed by BEH.    The district court denied the motion, and BEH appealed.    While the appeal was pending, BEH moved the district court to rescind the settlement agreement, or, in the alternative, to reconsider its rejection of BEH's motion to enforce the agreement.    The district court denied those requests as well, and BEH appealed once again.    Concluding that Norwood did breach one provision of the settlement agreement, we reverse the district court on that one score.    We otherwise affirm the denial of both motions.    Our reasoning follows.

## I.

## A.

BEH is a helicopter business that operates out of the Norwood Memorial Airport in Norwood, Massachusetts.    Since its founding in 2010, BEH has attempted to lease ramp space from the

- 3 -

airport in order to operate as a Fixed Based Operator (FBO).[1] In late 2012, the Norwood Airport Commission (NAC) -- a government agency that controls the airport -- approved BEH's fuel facility and hangar; a month later the Norwood Fire Department approved its fuel system; and the Board of Selectmen -- which oversees the NAC -- approved its fuel permit. The Federal Aviation Administration (FAA) then approved BEH's fuel system and operations. At that point, BEH was ready to operate as an FBO as soon as it leased ramp space from Norwood and completed construction of a hangar.

After BEH and Norwood failed to come to an agreement to lease the necessary ramp space, BEH sued in 2015. The gravamen of BEH's complaint was that Norwood conspired with BEH's competitor -- FlightLevel -- to "restrain competition and protect the incumbent FBO at the Airport." According to BEH, Norwood had been stringing it along, inducing it to build a new hangar and obtain permits, just to pull the rug out from under BEH when it came to acquiring the necessary lease, all so FlightLevel would remain the only FBO at the Norwood airport.

On Norwood's motion, the district court dismissed all BEH's claims save one. The court held that BEH adequately alleged

---

[1] An FBO is a private business granted the right by an airport to operate at the airport and provide aviation services, like fueling, parking, and maintenance.

that, in refusing to issue an FBO permit, Norwood had retaliated against BEH for exercising its First Amendment rights.

**B.**

After several years of litigation, the court set a trial date for December 10, 2018. In the weeks leading up to the trial, the parties engaged in settlement negotiations. Eventually, they orally agreed upon an eight-page, unsigned term sheet, which sketched out the skeleton of a settlement agreement. The agreed-upon terms required Norwood to approve BEH as an FBO and to provide BEH a five-year lease of designated property at the airport, including a ramp known as the West Apron that BEH needs to operate as an FBO. The term sheet did not mention any easement for FlightLevel on the to-be-leased ramp. Nevertheless, when Norwood's attorney sent BEH a fleshed-out draft of the settlement agreement, it contained the following language:

> The West Apron Lease shall be subject to an easement allowing [FlightLevel] to access the fueling facility located on Lot G.

BEH objected. That same day, it returned a redline of the proposed agreement with the easement language crossed out. In brackets, BEH explained to Norwood that an easement was not consistent with its proposed hangar construction -- which Norwood elsewhere in the draft agreed to assist in approving -- and insisted that the easement be terminated (or that the rights be assigned to BEH, who could then "deal with FlightLevel"). BEH worried that an easement

- 5 -

would interfere with its use of the West Apron by, for example, requiring it to move parked aircraft (if even possible, given space constraints) to accommodate FlightLevel's passage.

Norwood balked at deleting the language stating that the lease would be subject to an easement for FlightLevel.  Several other disputes concerning the wording of the settlement agreement also arose.  At that point, BEH returned to the district court asking that it require Norwood to enter into an agreement in accord with the term sheet.  The parties engaged in further motion practice regarding the terms of the settlement, after which the court held a two-day settlement conference to address the remaining items of contention, including whether the West Apron lease would be subject to an easement.  The impasse regarding an easement resolved when Norwood's lawyer announced in open court:

> The Board of Selectmen met in executive session yesterday and have basically approved all of those three items in favor of Boston Executive Helicopter.  So <u>I have revised the Settlement Agreement and Release so that there no longer is an easement on the West Ramp</u>.

(Emphasis added.)  Based on that representation, the parties signed a final settlement agreement.  As relevant to this appeal, Norwood promised:

> (1)  to enter into a "standard form, non-exclusive lease" with BEH for the West Apron, which would enable BEH to operate as an FBO;

(2)    to support BEH's application to the FAA for the removal of "TOFA" (i.e., taxiway object free area) markings from BEH's leased areas;[2]

(3)    to contemporaneously provide all emails and correspondence between Norwood and FlightLevel;

(4)    to allow BEH to participate in all meetings regarding negotiations with the FAA over a Joint Corrective Action Plan (JCAP) based on the FAA's finding that Norwood had violated BEH's rights; and

(5)    a payment to BEH.

After a brief skirmish over Norwood producing an executed copy of the agreement and paying the settlement proceeds, the parties filed a stipulation of dismissal on September 12, 2019. The court "retain[ed] jurisdiction" to "resolve any disputes that may arise from the implementation of the settlement agreement's terms."

## C.

Just over a year later, BEH was back in court moving to enforce the settlement agreement. According to BEH, it still did not have a lease for ramp space that could be used as planned for

_____

[2]  TOFA markings delineate the area that must be kept free of parked aircraft and other objects (including vehicles) not needed for air navigation or ground maneuvering, and any vehicle must give right of way to oncoming aircraft.

- 7 -

FBO operations because Norwood only offered a lease for the West Apron that it said would be subject to an easement held by FlightLevel. BEH also alleged that Norwood undermined its petition with the FAA to remove TOFA markings from its taxiway (which Norwood had promised to support) by affirmatively advocating for the markings to expand into the areas containing BEH's hangar. BEH complained that Norwood purposefully withheld communications with FlightLevel that it had agreed to provide to BEH. And BEH faulted Norwood for failing to invite it to negotiations with the FAA over the JCAP. Finally, BEH accused Norwood of both fraud in the inducement concerning the settlement agreement and continuing to retaliate against it.

The district court denied BEH's motion to enforce the settlement agreement. As for the easement to FlightLevel, the court focused on the fact that the written settlement agreement did not actually say that Norwood had to provide a lease free of an easement for FlightLevel. Rather, it only required Norwood to provide a "standard form, non-exclusive lease agreement." The district court reasoned that "non-exclusive" unambiguously means that the lease need not be free of encumbrances, regardless of the express statement to the contrary by Norwood's counsel during the settlement hearing. According to the district court, it mattered not what had been said before the agreement was signed. For the TOFA markings, the court held that Norwood satisfied its

responsibility by submitting a letter to the FAA supporting BEH's application for their removal. The court found that the settlement agreement did not restrain Norwood from taking any other actions with respect to TOFA markings at the airport. The court rejected the remaining claimed violations of the settlement agreement because BEH did not "identify any documents specifically or generically" that it thought Norwood should have provided and because Norwood was not required to invite BEH to attend "meetings at which the FAA is in attendance." Finally, the court declined to consider any argument that Norwood committed fraud in the inducement or that Norwood was continuing to retaliate against BEH because those claims went beyond simply enforcing the settlement agreement, which is all the court retained jurisdiction to do.[3]

BEH timely appealed.

### D.

While BEH's appeal was pending, a few things happened on the ground that affected the record on appeal.

First, BEH and Norwood actually signed a five-year lease for the West Apron. That lease, as BEH points out, says nothing about encumbrances; nevertheless, Norwood continues to maintain

---

[3] The district court also denied two other aspects of the motion not raised in BEH's appeal of its original motion to enforce. First, the district court found that Norwood did not breach a provision of the agreement regarding the makeup of its Board of Selectmen. Second, the district court declined to sanction Norwood.

that FlightLevel still has an easement to use the West Apron. The lease also includes a so-called integration clause, which Norwood contends moots any dispute concerning the nature of the lease called for by the settlement agreement. Norwood sought to supplement the appellate record with the newly executed lease. In the absence of any opposition, and because a claim of mootness bears on our jurisdiction, we granted Norwood permission to do so. Cf. Redfern v. Napolitano, 727 F.3d 77, 83 (1st Cir. 2013).

Then, in July 2021, BEH received a response to a public-records request, which included (according to BEH) documents that should have been provided under the settlement agreement and which were proof that Norwood committed fraud to induce the settlement. So BEH, like Norwood before it, sought to supplement the appellate record. Norwood opposed the motion, and we ultimately denied it.

In the weeks following oral argument before this court, BEH filed with the district court an omnibus motion for rescission of the settlement agreement or, in the alternative, reconsideration by the district court. BEH mostly just repeated the arguments it made before and had made on appeal, but it also raised the new evidence received through its public-records request. The district court correctly rebuffed BEH's motion because the court no longer had jurisdiction given BEH's pending appeal. See United States v. Brooks, 145 F.3d 446, 455-56 (1st Cir. 1998) ("[T]he filing of a notice of appeal 'divests a district

- 10 -

court of authority to proceed with respect to any matter touching upon, or involved in, the appeal.'" (quoting United States v. Mala, 7 F.3d 1058, 1061 (1st Cir. 1993))).

BEH timely appealed that ruling. We dismissed that appeal without prejudice and (while retaining jurisdiction) ordered the case itself remanded in part for the sole purpose of having the district court consider the new motion. The district court promptly denied both the motion for rescission, as outside its retained jurisdiction to enforce the settlement, and the alternative motion for reconsideration, as not made within a reasonable time and because "BEH merely recycle[d] arguments already rejected." See Fed. R. Civ. P. 60(b)(6), (c)(1).

BEH, for the third time, timely appealed. We consolidated the first and third appeals (the second having been dismissed).

## II.

We begin with BEH's motion for rescission of the settlement agreement or, in the alternative, for reconsideration.

The district court held that it did not have jurisdiction to hear BEH's motion to rescind the settlement agreement because the district court only retained jurisdiction to enforce it. We agree. See Vikas WSP, Ltd. v. Econ. Mud Prods. Co., 23 F.4th 442, 453 (5th Cir. 2022) (concluding that hearing a fraud claim through a district court's ancillary power to "enforce the settlement"

- 11 -

would "stretch retained jurisdiction too far").  BEH's arguments based on fraud in the inducement should have been raised in a separate suit, likely in state court.  Indeed, BEH appears to have already done so.  See Answer to Second Am. Verified Compl. & Am. Countercl. at 39-41, <u>FlightLevel Norwood, LLC</u> v. <u>Bos. Exec. Helicopters, LLC</u>, No. 1982CV01099, Dkt. No. 35 (Norfolk Super. Ct. filed Mar. 22, 2021).[4]

As for BEH's appeal of the denial of its motion to reconsider the order denying BEH's motion to enforce, we find the dispute, for the most part, moot on appeal.  We are, in this opinion, considering BEH's appeal of the district court's rejection of its original motion to enforce, and BEH's motion to reconsider that order raises substantially the same points.  So our decision on the merits of the original motion resolves the latter.

---

[4]  BEH's continued attempt to enforce the settlement agreement seems, at least at first blush, misplaced given its pending state court action seeking to rescind that very agreement.  Norwood, though, claims no material inconsistency between the two requests. Nor do we see any such inconsistency.  In essence, BEH is arguing in the alternative: rescind the settlement agreement or, if not, enforce it.  This alternative argument seems odd only because its two components are being pressed in different courts for jurisdictional reasons.  In theory, this runs the risk that the two courts could issue contradictory decisions to enforce and to rescind.  But neither party suggests that such an inconsistent grant of mutually conflicting alternatives is possible as matters now stand.

There are two exceptions, however.  First, the motion to reconsider included newly acquired evidence that, BEH contends, shows that Norwood breached its obligation to provide all communications with FlightLevel.  We address that evidence below.  Second, BEH's motion to reconsider (and appeal of its denial) revives one argument that it did not raise in its direct appeal of the district court's order denying its motion to enforce, namely that Norwood breached a provision of the settlement agreement related to the makeup of the Board of Selectmen.  But BEH's one-paragraph argument in its reconsideration appeal fails to explain how Norwood breached this provision, nor does it cite any authority supporting its contention.  So we find it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## III.

We turn next to BEH's appeal of the district court's denial of its motion to enforce the settlement agreement.  Given that the district court denied the motion based on its reading of the agreement's text, without relying on any fact finding, we "review the district court's interpretation of a settlement agreement de novo," applying state contract law.  In re Volkswagen and Audi Warranty Extension Litig., 692 F.3d 4, 13, 15 (1st Cir. 2012).  Here, Massachusetts law plainly governs.  See id. at 17-21 (applying choice-of-law principles).

- 13 -

BEH maintains that Norwood has breached provisions of the settlement agreement regarding (1) leasing the West Ramp, (2) removing TOFA markings, (3) receiving communications between Norwood and FlightLevel, and (4) attending meetings regarding negotiations with the FAA. We conclude, as BEH argues, that Norwood agreed in the settlement agreement to provide a lease for the West Ramp without an easement in favor of FlightLevel, reversing the district court on that score, but we otherwise affirm the district court's rejection of the motion to enforce.

**A.**

Under the settlement agreement, Norwood was obligated to grant BEH "standard form, non-exclusive lease agreements" for two ramps, including the West Apron on which Norwood now claims there is an easement. BEH contends that this obligation, construed in light of the parties' negotiations, requires Norwood to provide a lease for the West Apron free of any encumbrance in favor of FlightLevel. Norwood offers two rejoinders: (1) How to interpret the obligation to grant leases under the settlement agreement is now "moot" because the parties have actually entered into a lease for the West Apron, which is fully integrated and accordingly supersedes any prior agreements "with respect to the matter covered" in the new lease; and (2) in any event, the district court correctly held that the settlement agreement did not obligate Norwood to provide a lease free of any easements. For the

- 14 -

following reasons, we think that BEH has the better position on each of these arguments.

**1.**

Norwood's "mootness" argument hinges on the application of the integration clause in the new lease to bar any recourse to the prior settlement agreement in construing the parties' rights and obligations regarding the leased premises. The lease's integration clause states: "This Lease represents the entire agreement between the parties hereto with respect to the matter covered herein. No other agreement, representations, warranties, proposals, oral or written, shall be deemed to bind the parties."

Norwood would have us read "the matter covered herein" as including whatever obligations Norwood has under the settlement agreement to lease the West Apron. But the lease does not so state. Rather, the cited clause is limited to the matters covered by the lease, and the lease does not address the subject of easements at all.[5] Indeed, the lease (unlike the settlement agreement) does not even contain the word "non-exclusive" deemed so crucial by Norwood and the district court in construing the settlement agreement itself. And neither party points to any

---

[5] The lease disavows any representation by Norwood that the leased premises is "fit for the uses to which [it is] placed by the lessee." In context, we do not read this reservation as bearing on legal title or title impairments, such as an encumbrance.

- 15 -

default rule allocating to one party or the other the risk that a leasehold may be subject to an easement that defeats a principal and mutually understood purpose of the lease.

We, therefore, see no reason why the lease must be viewed as inconsistent with a prior obligation to provide a West Apron lease without an easement.  See 11 Williston on Contracts § 33:31 (4th ed. Nov. 2021 Update) ("[A] written agreement [is not superseded or invalidated] by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and [] is made for separate consideration."); see also De Blois v. Boylston & Tremont Corp., 183 N.E. 823, 827 (Mass. 1933) (explaining that a prior agreement is still applicable as long as it is not so inconsistent with the new contract that they cannot stand together).  Rather, if we were to find that Norwood had agreed in the settlement agreement to lease the West Apron to BEH with any easement in favor of FlightLevel removed, the executed lease would stand at most as an incomplete performance of such an agreement.  Accordingly, nothing in the lease's integration clause renders moot the issue of whether the parties, before signing the new lease, agreed that there was to be no such encumbrance.

**2.**

That, then, brings us back to whether the parties ever so agreed.  That is, should the settlement agreement be read as

- 16 -

calling for a lease of property unburdened by an encumbrance of the West Apron in favor of FlightLevel that rendered BEH's intended use unavailable?

The parties' prolonged negotiations prior to signing the settlement agreement make it crystal clear that there was to be no encumbrance in favor of FlightLevel. The parties stood at an impasse over precisely this issue, with BEH steadfastly insisting that no encumbrance should exist. That impasse only broke when Norwood dramatically announced in open court that "there no longer is an easement on the West Ramp" and agreed to strike the language reserving an easement "allowing [FlightLevel] to access the fueling facility" on the to-be-leased property.

Of course, even crystal-clear parol evidence that the parties negotiated an agreement on a point can be rendered essentially irrelevant by a clear contrary statement in a subsequent written memorialization of the parties' final understanding. See Gen. Convention of New Jerusalem in the U.S., Inc. v. MacKenzie, 874 N.E.2d 1084, 1087–89 (Mass. 2007). And, here, there was another such written agreement executed after Norwood gave the foregoing assurance: the settlement agreement itself. The district court accepted Norwood's argument that the settlement agreement's requirement that Norwood provide a "standard form, non-exclusive lease" was unambiguous and accordingly precluded any reliance on the evidence of the parties'

- 17 -

negotiations. For precisely this reason, the district court put entirely to one side the foregoing crystal-clear parol evidence.

With the benefit of more time and the focus provided by appellate briefing, we disagree. The settlement agreement, like the new lease, makes no mention either way of encumbrances. It does contain the word "non-exclusive," but it is hardly self-evident that the word as used here was intended to allow Norwood to turn around and encumber the property so as to fundamentally interfere with its intended use. Certainly that word cannot mean, for example, that Norwood could simultaneously lease to multiple FBOs property that could only support one FBO.

Our reluctance to construe "non-exclusive" as "not excluding easements that would fundamentally interfere with the property as an FBO" finds support in the fact that, in context, the notion of exclusivity has an entirely different meaning and purpose. Lessees of a commercial property often would prefer that the lessor not lease other portions of its property to a competitor. For example, a supermarket leasing space in a mall might well want the owner of the mall to give the lessee an "exclusive" deal, barring the leasing of other lots in the mall to a competing supermarket. So, too, here, might an FBO at an airport prefer to construe its lease as barring the airport from leasing airport property to a competitor.

But federal law prohibits exclusivity of precisely that type. See 49 U.S.C. §§ 40103(e);[6] 47107(a)(4).[7] And Norwood has previously found itself in hot water for granting such exclusivity to a tenant (notably, FlightLevel). See Final Decision and Order, Bos. Air Charter v. Norwood Airport Comm'n, FAA Docket No. 16-07-03, Final Decision and Order, 2008 WL 4186034 (Aug. 14, 2008). The FAA found Norwood violated, among others, the "Exclusive Rights" grant assurance, which "implements the provisions of 49 U.S.C. §§ 40103(e) and 47107(a)(4)." Id. at *15, *24–26.

To construe contract language precipitated by federal regulation, courts should look at "the regulation and the federal

_____

[6] "No Exclusive Rights at Certain Facilities. A person does not have an exclusive right to use an air navigation facility on which Government money has been expended. However, providing services at an airport by only one fixed-based operator is not an exclusive right if [] it is unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide the services." 49 U.S.C. § 40103(e)(1).

[7] "General Written Assurances. The Secretary of Transportation may approve a project grant application under this subchapter for an airport development project only if the Secretary receives written assurances, satisfactory to the Secretary, that [inter alia] a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport, with a right given to only one fixed-base operator to provide services at an airport deemed not to be an exclusive right if-- (A) the right would be unreasonably costly, burdensome, or impractical for more than one fixed-base operator to provide the services; and (B) allowing more than one fixed-base operator to provide the services would require reducing the space leased under an existing agreement between the one fixed-base operator and the airport owner or operator." 49 U.S.C. § 47017(a)(4).

policy underlying the regulatory scheme." Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 436 (1st Cir. 2013) (en banc) (lead opinion of equally divided court); see also Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1105 (11th Cir. 2014) (adopting the position of Kolbe's lead opinion).  Here, the regulatory context provides strong evidence that "non-exclusive" means that the airport can allow competing FBOs, not that it can grant incompatible rights in the same land to others.  This conclusion finds further support in the fact that the only discussion of exclusivity in Norwood's standard-form lease is in relation to the FAA requirements:  "It is understood and agreed that . . . nothing herein contained shall be construed as granting or authorizing the granting of an exclusive right within the meaning of Section 308 of the Federal Aviation Act of 1958."[8]

It therefore seems quite likely that the term "non-exclusive" was intended by the parties simply to make clear that, in accord with federal non-exclusivity rules, Norwood was not obligated to bar other FBOs from the airport.  So read, it would say nothing about whether there could be an easement over the

---

[8] Norwood's standard-form lease is referenced in the settlement agreement and is therefore appropriately considered to aid our interpretation.  See 11 Williston on Contracts § 30:26 (4th ed. Nov. 2021 Update) ("[A] contemporaneous writing known to the parties may shed light on the meaning of a contract without being part of the contract.").

leased property. But we need not make that determination definitively. At the very least, the settlement agreement is ambiguous as to whether the language "standard form, non-exclusive lease" allows Norwood to let another FBO use the very same real estate leased to BEH, much less to do so in a manner that significantly constrained BEH's own use of the West Apron. See PaineWebber Inc. v. Elahi, 87 F.3d 589, 600 (1st Cir. 1996) ("A contract term is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.'" (quoting Walk-In Med. Ctrs., Inc. v. Breuer Cap. Corp., 818 F.2d 260, 263 (2d Cir. 1987) (applying New York law))).

To "ascertain[] the intent of the parties as imperfectly expressed in ambiguous contract language," Massachusetts courts look to extrinsic evidence, with "the parties' negotiations" being the most important. Den Norske Bank AS v. First Nat'l Bank of Bos., 75 F.3d 49, 52 (1st Cir. 1996). Nevertheless, Norwood contends that the court still cannot consider representations made in the negotiation process because the settlement agreement also contains an integration clause, which states that the agreement "supersedes all prior written and oral agreements and all contemporaneous oral negotiations, commitments and understandings

- 21 -

between the parties" and that they "have not relied upon any other representations or statements made by any person or entity." But, "whether or not [a writing] is integrated," "negotiations prior to or contemporaneous with the adoption of [that] writing are . . . admissible to establish . . . the meaning of the writing." 11 Williston on Contracts § 33:26 (citing Restatement (Second) Contracts § 214(c)); <u>see also</u> <u>Bettencourt</u> v. <u>Bettencourt</u>, 284 N.E.2d 238, 243 (Mass. 1972) (holding that while parol evidence "cannot be employed to vary an integrated written agreement," it is "properly considered" to "assist in determining what the parties intended"). Thus, the settlement agreement's integration clause does not bar our consideration of the negotiations "to interpret and apply language <u>used</u> in" that agreement. <u>Simon</u> v. <u>Simon</u>, 625 N.E.2d 564, 568 (Mass. App. Ct. 1994) (citing <u>Tzitzon Realty Co.</u> v. <u>Mustonen</u>, 227 N.E.2d 493, 496 (Mass. 1967)).

Luckily, the negotiations over this provision clearly indicate the parties' intentions on this precise issue. A quick recap: Norwood wanted to allow for an easement, BEH objected, an impasse arose. Norwood then publicly announced that its Board of Selectmen had decided the item in favor of BEH, and the language providing for an easement was stricken. This lead-up to the signing of the settlement agreement resolves any relevant ambiguity about the meaning of the term "standard form, non-exclusive lease" as intended by the parties. We, therefore,

conclude that a "standard form, non-exclusive lease," as used in this agreement, means a lease unencumbered by an easement in favor of FlightLevel to the extent it materially impedes BEH's intended use of the to-be-leased ramp.

In summary, the parties' negotiation of the settlement agreement made it eminently clear that the West Apron to be leased to BEH was not to contain an easement in favor of FlightLevel. And nothing in the subsequently signed agreement or the executed lease spoke to this subject in a manner that precludes reference to the negotiation in construing the language of the settlement agreement or in determining whether Norwood has fully complied with that agreement by leasing the West Apron subject to an easement it had promised to remove. Accordingly, on remand, the district court need fashion an appropriate remedy to the extent that Norwood has yet to provide a lease for the West Apron free of any easement in favor of FlightLevel.[9]

**B.**

The settlement agreement contains the following provision concerning so-called TOFA markings, which limit the space within the leased area that BEH can actively use:

---

[9] In passing, BEH contends that the court "also erred in failing to address [its] claim that [Norwood] failed to provide a lease to BEH for the amount of space promised under the Settlement Agreement which, in and of itself, warrants reversal." We treat this undeveloped argument as waived on appeal. See Zannino, 895 F.2d at 17.

> BEH shall prepare a petition to the FAA, with appropriate plans or drawings, seeking approval for the removal of all TOFA and/or OFA markings in Taxiway 3. The NAC shall submit a letter to the FAA in support of BEH's petition for TOFA and/or OFA relief within thirty (30) days after the receipt of BEH's submission to the FAA. If approved by the FAA, the TOFA/OFA markings on Taxiway 3 shall be removed by the NAC within sixty (60) days.

BEH contends that Norwood violated this TOFA provision by attempting to undermine BEH's petition to the FAA for approval to remove the TOFA markings. As proof, BEH points to two actions by Norwood.

BEH claims, first, that Norwood breached this agreement because its letter was late. Assuming that to be so, the record is nevertheless bereft of evidence that the delay caused any harm. Moreover, on its face, the letter otherwise complies with the agreement. We therefore agree with the district court that BEH's request to "enforce" this provision of the settlement agreement makes no sense.

BEH claims, second, that Norwood has breached the agreement by seeking, months after submitting its letter supporting the removal of TOFA in Taxiway 3, to increase TOFA markings in other areas around BEH's hangar. BEH, though, points to no language in the various agreements or even the parties' negotiations suggesting any obligation by Norwood not to seek additional TOFA markings. The settlement agreement only requires

- 24 -

Norwood to "submit a letter in support of BEH's petition" for the removal of existing TOFA and, if the petition is approved, to remove those markings. Norwood has complied with the first requirement (albeit late), and there is no indication in the record that BEH's petition has been granted to trigger the second. Nor does BEH point us to any evidence in the record that Norwood's proposed markings duplicate or overlap with the markings BEH seeks to remove.

On appeal, BEH tries a different tack, contending that Norwood could be found to have breached the implied covenant of good faith, which Massachusetts recognizes in some circumstances, see Fortune v. Nat'l Cash Reg. Co., 364 N.E.2d 1251, 1255-56 (Mass. 1977), but not in others, see Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). BEH only obliquely referred to the implied covenant of good faith in its motion to enforce filed in the district court: In one line of its memorandum of law, it alleged that Norwood breached "the letter and spirit" of the agreement. But, as to the latter, it said nothing more. It cited no pertinent cases. Nor did it try to explain how these facts would qualify under Massachusetts law. And its supporting affidavit offered no explanation for how the requested new TOFA markings by themselves frustrated the purpose of the agreement. Indeed, we cannot even tell from the appellate briefs where the proposed markings would be in relation to the existing markings.

This argument, "not seasonably advanced below[,] cannot be raised for the first time on appeal." Johnson v. Johnson, 23 F.4th 136, 143 (1st Cir. 2022).[10]

## C.

In a handwritten and initialed provision of the settlement agreement, the parties agreed:

> For a period of eighteen (18) months following execution of this Agreement, and subject to any applicable exemptions under the Massachusetts Public Records Law, the Town and the NAC agree to copy, or distribute copies, to both BEH and FlightLevel Norwood, LLC . . . any and all email and correspondence, by and between the NAC and BEH or [FlightLevel], contemporaneously with any such communications.

BEH contends that Norwood has "continually failed to comply" with this provision and has "continued to conceal communications." Thus, BEH believes the district court erred by failing to order Norwood to produce communications falling under the provision or to order Norwood to certify that all such communications have been provided. We disagree. As the district

---

[10] BEH did more or less advance this argument in its motion for reconsideration before the district court, but the court found that motion untimely under Rule 60(c). "District courts enjoy considerable discretion" in deciding Rule 60 motions, Cotto v. United States, 993 F.2d 274, 277 (1st Cir. 1993), and BEH offers no argument establishing that the district court abused that discretion regarding the TOFA provision.

court held, BEH failed at that time to identify any communications subject to the provision that had not been produced.

In its motion for reconsideration, BEH pointed to newly discovered emails it received through a public-records request that it claims Norwood should have produced earlier.[11]  But in its appeal from the district court's denial of its motion for reconsideration, it did not raise this argument in its opening brief.  Although BEH described the new evidence in its statement of the case, it failed to make any argument that Norwood thus breached the provision of the settlement agreement requiring Norwood to share certain communications with BEH; BEH instead focused exclusively on how the new evidence supported its fraud claims.  BEH thus waived any such argument.  See Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., 954 F.3d 397, 407-08 (1st Cir. 2020) (deeming waived an argument only "mention[ed] in [appellant's] opening brief's statement of the case" and "not discuss[ed] elsewhere in its briefs"); see also Britto v. Prospect Chartercare SJHSRI, LLC, 909 F.3d 506, 514 (1st Cir. 2018) (deeming waived an argument that appellant only included in the

---

[11]  We assume without deciding that this portion of BEH's motion to reconsider was timely under Rule 60(c).

- 27 -

"jurisdictional section" and "statement-of-the-case section" of his brief, but did not discuss "in the brief's argument section").[12]

## D.

Finally, we turn to BEH's allegation that Norwood breached the settlement agreement by excluding it from meetings with the FAA. Norwood agreed that

> BEH shall be allowed to participate in any meetings, and be copied on all correspondence, regarding the negotiation with the FAA regarding negotiation of required remedial measures in connection with [an FAA determination], with the intention and goal of crafting a "Joint Corrective Action Plan."

The district court interpreted this provision to only require BEH's participation in meetings "regarding the negotiation" with the FAA, but not any meetings with the FAA itself. But the provision broadly states that BEH "shall" be permitted to participate in "any" meetings -- and copied on "all" correspondence -- regarding the negotiation with the FAA. And it is hard to say that a meeting with the FAA "regarding negotiation" of a JCAP does not "regard[] the negotiation with the FAA."

---

[12] To the extent BEH is harmed by a later-discovered withholding by Norwood or some new evidence suggests that Norwood is not telling the truth, the district court has retained jurisdiction to continue to enforce this settlement agreement. At this juncture, however, we are left to affirm the district court's dismissal of BEH's motion as it pertains to communications.

It is unclear, however, what relief BEH is now seeking under this provision. BEH points to no ongoing or future negotiations with the FAA to which it could be invited, nor does BEH explain what, if anything, Norwood must now do. Accordingly, we affirm the district court's denial of BEH's motion to enforce this provision of the settlement agreement because there currently is no basis to think that it will be breached in the future.

**IV.**

For the foregoing reasons, we <u>reverse</u> the denial of BEH's motion to enforce the settlement agreement as it pertains to Norwood's failure to provide a lease of the West Apron free of an easement in favor of FlightLevel and <u>remand</u> for consideration of this claim consistent with this opinion. We otherwise <u>affirm</u> the denial of the motion to enforce, the denial of the motion to rescind, and the denial of the motion to reconsider. Each party will bear its own costs.