# United States Court of Appeals
## For the First Circuit

No. 17-2122

UNITED STATES OF AMERICA,

Appellee,

v.

ALEX COLÓN-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Louis Guirola, Jr.,* U.S. District Judge]

Before

Kayatta, Circuit Judge,
Souter,** Associate Justice,
and Selya, Circuit Judge.

Irma R. Valldejuli on brief for appellant.
Rosa Emilia Rodriguez-Velez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

April 19, 2019

* Of the Southern District of Mississippi, sitting by designation.
** Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**.  Dismayed by his 240-month prison sentence, defendant-appellant Alex Colón-Rosario claims that the prosecutor committed various breaches of his plea agreement (the Agreement) during the disposition hearing.  Since the appellant raises these claims for the first time on appeal, our review is solely for plain error.  Discerning none, we affirm the judgment below.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  Because this appeal trails in the wake of a guilty plea, we draw our account from the Agreement, the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Coleman, 884 F.3d 67, 69 (1st Cir. 2018).

Following the expiration of a restraining order previously obtained by the mother of his seven-year-old son, the appellant began taking the boy to his house for weekend visits.  During these interludes, the appellant voiced threats of violence, abused his son physically and sexually, and took pornographic pictures.  The boy's mother eventually noticed a significant change in his behavior and learned of the abuse.  On February 7, 2014, she notified the sex-crimes division of the Puerto Rico Police Department.

Matters deteriorated even further when, on March 28, 2014, the son either threatened or attempted to commit suicide three times during the course of the day. After the third incident, the boy was hospitalized in a mental institution. He was discharged after eight days of inpatient care.

We fast-forward to June 3, 2015, when a federal grand jury sitting in the District of Puerto Rico charged the appellant with three counts of transporting a minor (his son) with the intent to engage in criminal sexual activity. See 18 U.S.C. § 2423(a). The appellant initially maintained his innocence but, in due course, he entered into the Agreement and pleaded guilty to one count of the indictment.[1] The Agreement embodied the parties' stipulation to a total offense level (TOL) of 35. This figure included a two-level enhancement for the parental relationship, see USSG §2G1.3(b)(1); an eight-level enhancement for the victim's age, see id. §2G1.3(b)(5); and a three-level reduction for acceptance of responsibility, see id. §3E1.1(b). Although the Agreement indicated that other enhancements could be applied, they were omitted (apparently on purpose) from the offense level calculation. The Agreement left open the applicable criminal history category (CHC) but noted that a CHC of I would yield a guideline sentencing range (GSR) of 168-210 months. Not

---

[1] Pursuant to the Agreement, the other two counts of the indictment were dismissed at the time of sentencing.

coincidentally, the Agreement constrained the government to argue for a sentence of 168 months (the bottom of the putative GSR). Finally, the Agreement contained a waiver-of-appeal provision, which would take effect only if the district court sentenced the appellant "according to [the Agreement's] terms, conditions and recommendations, or sentence[d] him to any term of incarceration within the applicable guideline range based on a [TOL] of 35."

The tectonic plates shifted, though, when the probation department compiled the PSI Report. There, the probation department recommended a TOL of 43 — a figure reached by beginning with a higher base offense level and including enhancements that had not been factored into the guideline calculations used in the Agreement, such as enhancements for threats or force, the victim's vulnerability, serious bodily injury, and a pattern of criminal activity. See id. §§2A3.1(b)(1), 2A3.1(b)(4)(B), 3A1.1(b)(1), 4B1.5(b)(1). In combination with a CHC of I, this increased TOL boosted the appellant's GSR to life imprisonment. Neither party objected to the guideline calculations adumbrated in the PSI Report.

The appellant proceeded to file a sentencing memorandum seeking a 120-month sentence (the mandatory minimum for the offense of conviction). The memorandum outlined what he believed were mitigating factors, such as his impoverished childhood and his lack of education. The government's sentencing memorandum

defended the GSR calculated in the Agreement and explained that this calculation was "result-oriented" in that the government had tendered the plea offer to protect the victim from the trauma of a trial. Accordingly, the government asked the court to impose a 168-month sentence.

The disposition hearing was held on October 25, 2017.[2] At the hearing, the sentencing court adopted the guideline calculations set out in the PSI Report (not those limned in the Agreement). Defense counsel argued for the mandatory minimum sentence — a 120-month term of immurement. For his part, the prosecutor argued in support of an incarcerative sentence of 168 months. After considering the contentions of counsel, the PSI Report, and the factors enumerated in 18 U.S.C. § 3553(a), the court sentenced the appellant to a prison term of 240 months. This timely appeal followed.

## II. ANALYSIS

The appellant argues that the government failed to honor the commitments that it undertook in the Agreement. The various incidents of alleged breach relate to the government's supposed failure to advocate straightforwardly for the sentence that it had

---

[2] Hurricane Maria struck Puerto Rico prior to sentencing. The United States District Court for the District of Puerto Rico was forced to close temporarily and the sentencing phase of this case was conducted in a courtroom located in the Southern District of Mississippi.

agreed to recommend. There is, however, a threshold issue regarding the Agreement's waiver-of-appeal provision. We start there.

## A. **The Waiver-of-Appeal Provision.**

The government posits that this appeal should be dismissed because the appellant's opening brief failed to address the waiver-of-appeal provision at all. In the government's view, a defendant who signs a plea agreement containing an appeal waiver and then attempts to appeal must perforce explain, in his opening brief, why the waiver does not pretermit the appeal. For this proposition, the government relies on our decision in United States v. Miliano, in which we held that the defendant had an affirmative obligation to explain up-front why the waiver-of-appeal provision in his plea agreement was inapplicable. See 480 F.3d 605, 608 (1st Cir. 2007). We further held that, absent such an explanation, the defendant "forfeit[ed] any right to contend either that the waiver should not be enforced or that it d[id] not apply." Id.

Everything depends on context, though, and the government wrests Miliano from it contextual moorings. The rule established there pertains only when a colorable question exists as to whether a waiver-of-appeal provision applies. There is no such question here.

It is black-letter law that a waiver-of-appeal provision precludes only those appeals that fall within its scope. See

United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010). In this instance, the waiver-of-appeal provision obliterated the right to appeal only if the district court sentenced the appellant "according to [the Agreement's] terms, conditions and recommendations, or sentence[d] him to any term of incarceration within the applicable guideline range based on a [TOL] of 35." It is luminously clear that the sentence imposed did not fall within those parameters: the sentencing court eschewed the guideline calculations specified in the Agreement, adopted a more onerous set of calculations, and imposed a sentence substantially above the sentencing recommendations described in the Agreement. Given that the plain language of the waiver-of-appeal provision makes manifest that it does not apply to the sentence actually imposed by the district court,[3] it would have served no useful purpose for the appellant to address the appeal waiver in his opening brief — and he was under no obligation to do so. See United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013) (holding appeal waiver inapplicable when plain meaning of plea agreement "vitiated the waiver-of-appeal provision in its

---

[3] The proof of the pudding is that the government, in its brief on appeal, argues only that the appellant has defaulted by failing to address the waiver-of-appeal provision. It does not argue that the waiver-of-appeal provision can plausibly be read to bar this appeal. Indeed, the government concedes that "the waiver of appeal was not triggered because the district court did not sentence [the appellant] within the total offense level of 35."

entirety"); cf. Allen v. Att'y Gen. of Me., 80 F.3d 569, 573 (1st Cir. 1996) (explaining that "[t]he law . . . should not require litigants to engage in empty gestures").

## B. The Appellant's Claims.

This brings us to the appellant's claims of error. Our starting point is his claim that the prosecutor violated the Agreement by telling the district court that there were no mitigating factors in the appellant's case and that the only reason the government made such a "sweetheart deal" was to avoid exposing the victim (a young boy) to the rigors of trial. Because the appellant failed to preserve this claim below, our review is solely for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

As we have said, plain error is "a formidable standard of appellate review." United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000); see Fed. R. Crim. P. 52(b). It requires an appellant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60 (citing Johnson v. United States 520 U.S. 461, 466-67 (1997)). Within this rubric, an error is deemed to affect an appellant's substantial rights only when the error "likely affected the outcome

of the proceedings." United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014).

We detect nothing resembling plain error here. The Agreement committed the government to recommend a sentence of 168 months. Because the appellant's plea rested, in part, on this promise, the promise had to be fulfilled. See Santobello v. New York, 404 U.S. 257, 262 (1971). We add, moreover, that in the plea-agreement context, "we hold the government to 'the most meticulous standards of both promise and performance.'" United States v. Montañez-Quiñones, 911 F.3d 59, 64 (1st Cir. 2018) (quoting Correale v. United States, 479 F.2d 944, 947 (1st Cir. 1973)), cert. denied, ____ S. Ct. _____ (2019) [2019 WL 635196]. Satisfying these standards demands more than mere "lip service." Saxena, 229 F.3d at 6. Here, however, the government fulfilled the commitment that it had made. We explain briefly.

To begin, the government's obligation to honor its plea-agreement commitments does not exist in a vacuum. The government has a corollary obligation to furnish the sentencing court with accurate information and to answer the court's questions forthrightly. See Almonte-Nuñez, 771 F.3d at 90. When carrying out these duties, the government is under no compulsion to sugar-coat the facts. See id. at 91.

In the case at hand, the "sweetheart deal" statement to which the appellant refers was not a spontaneous utterance. To

- 9 -

the contrary, it was made in response to defense counsel's assertion that the government had agreed to recommend a bottom-of-the-range sentence and to allow the appellant to argue for a downward variance because of mitigating factors in the appellant's life. This assertion misrepresented the government's rationale, and the prosecutor had a right — indeed, a duty — to correct the misrepresentation and inform the sentencing court of the actual rationale. See id. at 89-90. That is exactly what the prosecutor did: he explained that "[t]he only reason [the appellant] got this sweetheart deal [wa]s because of the damage to the victim that would occur at trial." Since the challenged statement was made "to correct what the [prosecutor] reasonably viewed as a misstatement of fact by defense counsel," the statement did not work a breach of the Agreement. Id. at 90.

In a variation on this theme, the appellant attacks the "sweetheart deal" comment from a different angle. He suggests that the comment shows that the government acted in bad faith and "induce[d] him to plea." But this suggestion is pulled out of thin air: protecting a minor victim from exposure to trial may constitute a legitimate reason for offering a defendant a reduced sentence. Cf. Globe Newspaper Co. v. Super. Ct. for Norfolk Cty., 457 U.S. 596, 607 (1982) (concluding that state's interest in "safeguarding the physical and psychological well-being of a minor [victim] is a compelling one").

The appellant next asserts that the prosecutor breached the Agreement by "vigorously" delineating certain aggravating factors pertaining to his case.  He notes that, at the disposition hearing, the prosecutor made much of the fact that the victim was the appellant's minor son and recounted that the abuse consisted of oral sex, sodomy, physical harm, threats of violence, and rape. This assertion, too, is subject only to plain error review — and at any rate, it is unavailing.

As we already have indicated, the government has an affirmative obligation to supply the sentencing court with accurate facts, including relevant offense characteristics.  See Almonte-Nuñez, 771 F.3d at 90.  The appellant was not entitled to have the government soft-pedal those facts.  See id. at 91.

In all events, "[w]hen the parties agree that a defendant may argue for a particular sentence while the government may argue for a somewhat stiffer sentence, the government is not constrained to pull its punches when arguing for the stiffer sentence." Montañez-Quiñones, 911 F.3d at 65.  So it is here.  The Agreement contemplated that the government would recommend a 168-month sentence and that the appellant would ask for a 120-month sentence. Consistent with that framework, it was well within bounds for the prosecutor to recount the offense characteristics and to explain why those characteristics justified a 168-month sentence rather than the more lenient sentence that the appellant was seeking.

- 11 -

That the details of the offense of conviction were repulsive does not in any way circumscribe the scope of the prosecutor's permissible advocacy. See id.

In a last ditch effort to snatch victory from the jaws of defeat, the appellant asseverates that the prosecutor transgressed the Agreement by telling the sentencing court that "[t]he nature and circumstances of the offense, the seriousness of the offense, [and] the requirements for just punishment do not scream for a [downward] variance or a departure" from the GSR. Because a 168-month sentence necessitated a downward variance from the GSR adopted by the sentencing court, the quoted statement — in the appellant's view — undermined the foundation on which the proposed 168-month sentence rested. Thus, the appellant says the prosecutor took with the left hand what he was committed to give with the right hand.

This asseveration need not detain us. While the quoted statement is admittedly unclear as to which GSR calculation the prosecutor had in mind when speaking of the lack of any predicate for "a variance or a departure" — the GSR mentioned in the Agreement or the GSR adopted by the court — the prosecutor clarified any ambiguity within a matter of moments. He told the court that when he stated that "nothing the defense has said would imply that [the appellant] deserved a variance," he was referring to a "variance [from] our calculation [in] the plea agreement."

When assessing a claim that a prosecutor has breached a plea agreement, we must consider the sentencing record as a whole.  <u>See</u> <u>Almonte-Nuñez</u>, 771 F.3d at 91.  Seen in this light, we discern no hint of plain error in the challenged statement.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**<u>Affirmed</u>.**