# United States Court of Appeals
## For the First Circuit

Nos. 23-1502
     23-1503

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN KEMUEL FARGAS-REYES,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before
Montecalvo, Thompson, and Aframe,
Circuit Judges.

Jackson Whetsel, with whom Rachel Brill, Federal Public
Defender, Franco L. Pérez-Redondo, Assistant Public Defender,
Supervisor, Appellate Section, and Alejandra Bird-López, Assistant
Public Defender, were on brief, for appellant.
Ethan A. Sachs, with whom W. Stephen Muldrow, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Appellate Chief, and Maarja T. Luhtaru, Assistant United
States Attorney, were on brief, for appellee.

January 10, 2025

**THOMPSON, <u>Circuit Judge</u>.**

**PREFACE**

Jonathan Fargas-Reyes is a repeat firearms offender. Read on to learn more about his brushes with the law and why we can't vacate his sentences for committing another gun crime and for violating an earlier supervised release.

**HOW THE CASE GOT HERE**[1]

Back in September 2021, Fargas (as we'll now call him, per Spanish-naming customs) pled guilty to unlawfully possessing a Glock pistol changed to fire as a machinegun. <u>See</u> 18 U.S.C. § 922(o). A federal judge sentenced him to 33 months in prison plus 3 years of supervised release.[2] He started supervised release in November 2021. But he didn't stay out of trouble for very long.

Jump ahead only a few months, to January 2022. Puerto Rico police spied Fargas outside a house he shared with girlfriend

---

[1] The major background events are undisputed unless otherwise noted (we simplify the details here rather aggressively, adding more info later as needed for specific issues).

[2] Supervised release and the conditions on that release help "criminal defendants and the public alike by facilitating sooner rather than later" the offenders' "re-entry into society." <u>See</u> <u>United States</u> v. <u>Shultz</u>, 733 F.3d 616, 624 (6th Cir. 2013); <u>see also</u> <u>United States</u> v. <u>Siegel</u>, 753 F.3d 705, 708 (7th Cir. 2014) (stating that "[r]educing recidivism is the main purpose of supervised release, though some of the conditions of supervised release are intended to help the released prisoner adjust to life on the outside even if there is no worry that without them he would be likely to commit crimes").

Mary Herrera-Cruz (officers had heard he had a stolen Hyundai Tucson there). He was packing a pistol in his waistband and holding an AK-47-looking rifle in his right hand. Standing next to Herrera's Kia Rio, Fargas popped open the hatchback, put the AK-47 in a duffel bag and the pistol in a backpack, and dropped them both in the rear area before closing the door.

Herrera then walked over with her two young daughters. And everyone — Herrera (driver's seat), Fargas (front passenger's seat), and the girls (back seats) — got in the Kia. Fargas pulled a ski mask with eyeholes down over his face. Herrera drove off.

The police tried to stop them. But Herrera kept right on going. Following a short chase, Fargas stuck his arms out the car's window. Herrera stopped the Kia. And Fargas got out. Not ready (apparently) to give herself up, Herrera sped away.

After arresting Fargas, the police again raced after Herrera. Spotting her Kia on the side of the road, officers watched her fling the duffel bag into some bushes. She then closed the hatchback, got behind the wheel, and tried again to shake them. But she hit a barrier and then another vehicle (with the two girls still seated in the back of the Kia).

The police arrested Herrera too. And their search of the recovered duffel bag and backpack revealed 2 Glock pistols modified to fire as machineguns, 1 AK-47 pistol, 1 drum magazine,

6 high-capacity magazines, and 173 rounds of assorted-caliber ammo.

Indicted federally on firearms-related charges, Fargas and Herrera signed plea agreements with the government. Fargas — in February 2023 — pled guilty to illegally possessing firearms and ammunition as a convicted felon. See 18 U.S.C. § 922(g)(1). And Herrera — two months earlier, in December 2022 — pled guilty to aiding and abetting a convicted felon in illegally possessing firearms and ammunition. See id.; see also 18 U.S.C. § 2.

We'll have plenty to say later about what happened at sentencing.[3] But for now it's enough to note the following. The

---

[3] For anyone needing a refresher on how a federal district judge approaches sentencing, here it is. Using the now-advisory federal sentencing guidelines (Fargas's judge used the 2021 guidelines edition, the one in effect at the time of sentencing), the judge sets the defendant's

> base offense level — *i.e.*, a point score for a specified offense or group of offenses. The [judge] then make[s] adjustments for any aggravating or mitigating factors in the defendant's case, thus arriving at a total offense level. The [judge] also assign[s] points based on the defendant's criminal history — points that get converted into various criminal history categories, designated by Roman numerals I through VI. Armed with this info, the judge turns to the guidelines's sentencing table. And by plotting the defendant's total offense level along the table's vertical axis and his criminal history category along the table's horizontal axis, the judge ends up with an

- 4 -

advisory prison range.  From there, the judge sees if any departures are called for, considers various sentencing factors [listed in 18 U.S.C. § 3553(a)], and determines what sentence (whether within, above, or below the suggested range) seems appropriate.

United States v. Martínez-Benítez, 914 F.3d 1, 2 n.2 (1st Cir. 2019) (citations omitted).  As for the § 3553(a) factors, there are seven of them.

> Factor one is "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Factor two is
>
>> the need for the sentence . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> Id. § 3553(a)(2).  Factor three is "the kinds of sentences available."  Id. § 3553(a)(3). Factor four is the guidelines.  Id. § 3553(a)(4).  Factor five is "any pertinent policy statement . . . issued by the [s]entencing [c]ommission."  Id. § 3553(a)(5).  Factor six is "the need to avoid unwarranted sentence disparities." Id. § 3553(a)(6).  And factor seven is "the need to provide restitution to any victims." Id. § 3553(a)(7).

United States v. Correa-Osorio, 784 F.3d 11, 28 n.24 (1st Cir. 2015); see also Rita v. United States, 551 U.S. 338, 347-48 (2007). The probation office prepares a "presentence investigation report"

judge gave Fargas 120 months in prison for the new crime (the statutory max), well above both the parties' recommended range (57 to 71 months, with Fargas requesting 57 months and the government requesting 71 months) and the judge's calculated range (70 to 87 months, which mimicked probation's suggested range).[4] Because Fargas's conduct violated his supervised release for his earlier unlawful-gun-possession crime, the judge gave him an additional 24 months in prison (3 months above the uncontested 15-to-21-months range) for that infraction — to be served consecutively. The judge sentenced Herrera to 37 months in prison for her crime, well above both the parties' recommended range (18 to 24 months) but at the very bottom of the judge's calculated range (37 to 46 months, which mirrored probation's suggested range).[5]

On appeal, Fargas (the only defendant before us) accuses the government of breaching the plea agreement and criticizes the judge for selecting procedurally and substantively unreasonable sentences (we affirmed Herrera's sentence in an unpublished

---

to help the judge in the sentencing process. We'll just call that document (commonsensically if somewhat unimaginatively) the "report" the rest of the way.

[4] A sentence like Fargas's — one that's above the recommended guidelines range — is often referred to as an above-guidelines sentence or as an upwardly variant sentence. We'll use the two terms (or something similar) interchangeably.

[5] The same judge sentenced both Fargas and Herrera.

judgment and so discuss her case details only on a need-to-know basis).

**STANDARDS OF REVIEW**

We review *de novo* whether the government breached a plea agreement (*i.e.*, without deference to the district judge's ruling on this legal issue). See, e.g., United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014). But we do so only for preserved claims (*i.e.*, claims the defendant raised in the court below). See id. Unpreserved claims — if not waived (one waives a claim by intentionally relinquishing or abandoning it) — receive plain-error review, a notoriously difficult standard to satisfy. See, e.g., id.; see also United States v. Olano, 507 U.S. 725, 733 (1993). To win, a defendant must show not just an error but an error that's obvious (meaning an indisputable error under controlling law, such that the judge should've acted without counsel's prompting), which affects the defendant's substantial rights (meaning the error influenced the proceeding's outcome), *and* which would seriously damage the fairness, integrity, or public perception of the judicial system if we (using our discretion) don't fix it. See, e.g., Puckett v. United States, 556 U.S. 129, 135 (2009); United States v. Sansone, 90 F.4th 1, 7, 8 (1st Cir. 2024); United States v. McCullock, 991 F.3d 313, 317 (1st Cir.

- 7 -

2021); United States v. Montañez-Quiñones, 911 F.3d 59, 63-64 (1st Cir. 2018).

Conversely, we review a sentence's procedural and substantive reasonableness for abuse of discretion — with underlying factfindings inspected for clear error — only if the defendant objected below. See, e.g., United States v. Razo, 782 F.3d 31, 36 (1st Cir. 2015). Otherwise — assuming the arguments aren't waived — plain-error review applies. See, e.g., United States v. López-Felicie, 109 F.4th 51, 57 (1st Cir. 2024).

## PLEA-BREACH CLAIM

First up is the plea-breach issue, starting with some legal basics. Plea agreements are like contracts. See, e.g., United States v. O'farrill-López, 991 F.3d 45, 48 (1st Cir. 2021). So when prosecutors agree to make sentencing suggestions, they "must carry out [their] part of the bargain by making the promised recommendation[s]." See United States v. Benchimol, 471 U.S. 453, 456 (1985). Being held "to the *most meticulous standards* of both promise and performance," they must do more than pay "lip service" to their obligations. See United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022) (cleaned up and emphasis added) (first quoting United States v. Clark, 55 F.3d 9, 14 (1st Cir. 1995), and then quoting Almonte-Nuñez, 771 F.3d at 89). But their duty to "honor" their plea-agreement pledges doesn't occur in a "vacuum." See

- 8 -

United States v. Colón-Rosario, 921 F.3d 306, 312 (1st Cir. 2019). They must "answer the [judge's] questions forthrightly," for example. See id. Also if the agreement lets them request a sentence within a range that's "stiffer" than the defense's request, they must tell the judge "why [their] higher sentence" is better. See Lessard, 35 F.4th at 43 (cleaned up). And when performing "these duties," they needn't "sugar-coat the facts" either. See Colón-Rosario, 921 F.3d at 312.

Moving from generalities to specifics, we inspect the language of Fargas's plea agreement. One key provision says that he and the government agreed — "after due consideration of the relevant factors" cataloged in § 3553(a) (see our footnote 3) — that they would "request" a prison term within the range "of 57-71 months." Another says that they agreed that "any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the [p]lea [a]greement." And yet another says that he agreed that the to-be-imposed sentence "will be determined solely by the [judge]," who's "not required to accept" the parties' "recommended [sentencing] calculations."

Sort of building off this document, Fargas reasons that the government broke the agreement "by effectively advocating for" a higher-than-bargained-for sentence. His logic — as we grasp it

— goes something like this. (1) 71 months is the top of the parties' "57-71 months" suggested range. (2) By the time of sentencing, however, probation had recommended a 70-87-months range. (3) Probation's analysis — unlike the parties' — included (i) a stolen-gun sentencing enhancement because the National Crime Information Center's database listed one of the Glocks as stolen; (ii) a criminal-history enhancement because he "committ[ed] the instant offense while under a criminal justice sentence," known in sentencing parlance as a status-points adjustment; and (iii) a possible upward variance based partly on probation's view that the guidelines didn't account for the 1 drum magazine, 6 high-capacity magazines, and 173 bullets recovered.[6] (4) Objecting to these aspects of probation's appraisal, Fargas requested a 57-months sentence — the lowest suggested sentence under the agreement. (5) But in requesting 71 months — the highest suggested sentence under the agreement — the prosecutor "emphasiz[ed] aggravating facts," without modifying her "pitch[]" to probation's recently proposed 71-87-months range. And "given the context," her "arguments read as reasons" — made with knowing winks and nods —

---

[6] Just as an fyi, we discuss the subjects identified in romanettes (i)-(iii) later in the opinion as well.

"to drive the sentence upward within" probation's calculated "range" and "even beyond" (or so his thesis wraps up).[7]

Commendably, Fargas correctly concedes that he must show plain error because he didn't push that argument below. But faced with what looks to be a "90-degree climb," he can't scale plain error's challenging heights. See United States v. Takesian, 945 F.3d 553, 562 (1st Cir. 2019).

Knowing that "[t]he simplest way" to handle an issue "is often the best" way, see Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013) (quotation marks omitted), we needn't linger. "Not all breaches will be clear or obvious," our judicial superiors tell us. See Puckett, 556 U.S. at 143. Which is why plain error's second prong — requiring the complaining party to flag an undeniable mistake — often has "'bite' in plea-agreement

---

[7] Fargas also argues that the government's backing probation's suggestion that a stolen-firearm adjustment should apply and that the amount of ammo could justify an upward variance worked a breach of the agreement. We think not. Our read of the transcript convinces us that the prosecutor simply answered the judge's questions when asked — she didn't push for the adjustment and made no bones that "we did not consider this as part of the plea agreement" but that the government "will not go against the plea agreement" and that "our recommendation will still maintain what the plea agreement states." And she replied "[n]o" when defense counsel asked — after a back-and-forth with the judge — about whether the government was suggesting that the amount of ammo "is a factor to upwardly vary." So what she said "did not cross the line into forbidden terrain." See Almonte-Nuñez, 771 F.3d at 90.

- 11 -

cases." See id. The very gist of Fargas's breach theory is that even though the agreement let the parties request a sentence anywhere from 57 to 71 months, and even though the government did request 71 months, the prosecutor didn't tailor her "pitch[]" to push back on probation's range of 70 to 87 months and so her spotlighting certain aggravating facts to supposedly secure a sentence at the "higher end" of the *plea agreement's range* "effectively voiced support for a sentence at the high[] end" of *probation's range* "and beyond." But he points to no plea-agreement language obliging the prosecutor to adjust her "pitch[]" to probation's suggested range in the way he claims she had to. And he points to no binding authority finding a breach in the specific

circumstances of his case.[8]  Which plainly won't do on plain-error

review.  See, e.g., McCullock, 991 F.3d at 317.[9]

[8] Fargas is wrong if he thinks United States v. Cortés-López, 101 F.4th 120 (1st Cir. 2024), fills that gap.  Cortés-López held that because the parties' joint recommendation of 24 months of *probation* differed so drastically from probation's recommendation of 78 to 97 months in *prison*, the government had to offer "some minimal explanation" for "such a seemingly off-kilter, well-below guidelines recommendation" — with its failure *not to* do so being "tantamount to a repudiation of the [plea] agreement."  Id. at 133.  United States v. Acevedo-Osorio, 118 F.4th 117 (1st Cir. 2024) — another case Fargas relies on — is cut from similar cloth.  After noting that the parties jointly agreed to recommend 120 months in prison even though the guidelines prison range was 292 to 365 months, Acevedo-Osorio held that the government had to, but *didn't*, give "at least a 'minimal explanation'" for "'such a dramatic downward variation.'"  See id. at 132 (quoting Cortés-López, 101 F.4th at 132, 133); see also id. at 132-33 (stressing that despite the glaring difference between the plea agreement and the calculated sentencing range — the prosecution's proposal "was, in raw terms, fourteen years less than the minimum sentence called for by the [g]uidelines, and, in relative terms, less than half as long" — the government's lack of explanation for such "a startingly lenient" proposal left the "inevitably skeptical" judge in the dark about "why, in the government's view, the sentence was proper").  Fargas's situation — involving a plea agreement with a proposed range of 57 to 71 months, a probation report with a suggested range of 70 to 87 months, and a government request of 71 months — is, however, night-and-day different.

[9] Fargas's reliance on United States v. Gonczy, 357 F.3d 50 (1st Cir. 2004), and cases inspired by Gonczy, doesn't help his cause.  The government there agreed to recommend a sentence at the low end of the guidelines range.  Id. at 51.  The judge at sentencing calculated a range of 70 to 87 months.  Id. at 51.  And the prosecutor did recommend 70 months.  Id.  But after describing how the defendant had (among other things) "ruined many lives," she argued that he "at a minimum deserves what the guidelines provide for and those are his just des[s]erts."  Id. at 53-54.  In other words, despite agreeing to endorse a low-end guidelines-range sentence, the prosecutor argued that the *entire* guidelines range — covering 17 months — represented the "*minimum*" amount of

Because that's enough to decide the breach issue, we needn't — indeed, *mustn't* — address any other breach-related arguments. See United States v. Leach, 89 F.4th 189, 201 (1st Cir. 2023) (noting that the panel "start[ed] — and *end*[*ed*]" — its analysis "at the second step of [the plain-error] framework" (emphasis added)); see also PDK Lab'ys Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (explaining that "if it is not necessary to decide more, it is necessary not to decide more").

## PROCEDURAL-REASONABLENESS CLAIMS

Next up is the procedural-reasonableness issue. For the uninitiated, a sentence is procedurally unreasonable if the judge miscalculated the guidelines range, didn't consider the relevant § 3553(a) factors, picked a sentence based on clearly erroneous facts, or didn't adequately explain the ultimate choice. See, e.g., Gall v. United States, 552 U.S. 38, 51 (2007).

### New-Crime Sentence

Fargas offers lots of reasons why he thinks the upwardly variant 120-months new-crime sentence isn't procedurally

time he deserved. Nothing like that happened here, however. Which removes Fargas's case from Gonczy's compass.

reasonable. But none of his complaints merits relief (we discuss them in the order that makes sense to us).

*Stolen Firearm*

The judge applied a stolen-firearm enhancement after probation indicated that one of Fargas's Glocks "was reported as a stolen weapon" in the FBI's National Crime Information Center (NCIC for short) database.[10] See USSG § 2K2.1(b)(4)(A) (telling judges to up the offense level by two if the defendant "possessed" a "stolen" firearm).[11] Fargas objected to that enhancement in the district court, but on grounds entirely different from his arguments on appeal.

Fargas protested below that he didn't know "about a firearm being stolen" until probation filed its report. And from there he insisted that he couldn't be "expos[ed]" to that enhancement because the government hadn't proven that he had "knowledge" of the firearm's "status" as "stolen" when he possessed it (the defense told the judge that there's a "guidelines commentary" that undercut the "argument" but that the "commentary is contrary to the law"). His theory pivoted on a then-recent Supreme Court case, Rehaif v. United States, 588 U.S. 225 (2019).

---

[10] FBI of course is short for the Federal Bureau of Investigation.

[11] Again, remember that the judge used the 2021 version of the sentencing guidelines.

By way of background (and as Fargas's situation shows), convicted felons can't possess firearms. See 18 U.S.C. § 922(g)(1). And anyone who "*knowingly* violates" that ban may be imprisoned up to 10 years (the sentence Fargas got). See 18 U.S.C. § 924(a)(2) (emphasis added). Construing these provisions, Rehaif held that the government must prove not only that a defendant "knew he possessed a firearm" — but that the defendant also knew "that he" is a convicted felon "when he possessed it." See 588 U.S. at 227. And Fargas said in his sentencing memo and at sentencing that Rehaif's "logic" means he could only get the enhancement if prosecutors showed that he *knew* the gun was stolen when he had it (which, he continues, prosecutors never did).

Swapping out that argument for something new on appeal, Fargas now faults the government for not proving that the NCIC info was *reliable enough* to support the enhancement. See United States v. Bryant, 571 F.3d 147, 155 (1st Cir. 2009) (ruling that "it was simply not enough for the district court to have relied on the government's recitation of the [NCIC and other database] sources [about a prior conviction] cited in [probation's report] without any additional inquiry into the reliability of these sources").[12] Tellingly, his appellate briefs never invoke Rehaif,

---

[12] Discussing United States v. Parlor, 2 F.4th 807 (9th Cir. 2021) — after saying our Bryant opinion establishes binding precedent on the issue — Fargas (responding to the government's

despite the starring role <u>Rehaif</u> played below for him.  Which helps drive home how his *knowledge*-centric argument to the judge isn't the same as his *reliability*-centric argument to us.

And that's a big deal.  By débuting this reliability-based claim on appeal, Fargas must run the plain-error gauntlet. <u>See, e.g.</u>, <u>United States</u> v. <u>Soto-Soto</u>, 855 F.3d 445, 448 n.1 (1st Cir. 2017) (stating that "[t]o preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error").  But he doesn't tie his claim to that exacting standard.  Which means he's waived the claim.  <u>See, e.g.</u>, <u>United States</u> v. <u>Cruz-Ramos</u>, 987 F.3d 27, 40 (1st Cir. 2021).

---

brief) admits that other circuits have held that NCIC reports can provide "[]sufficient evidence showing that [a] []gun was stolen," particularly where "the government's evidence was uncontroverted." <u>See</u> <u>id.</u> at 814; <u>see also</u> <u>United States</u> v. <u>Saunders</u>, 572 F. App'x 816, 817-18 (11th Cir. 2014) (holding that "[t]he district court did not clearly err in imposing the two-level enhancement for a stolen firearm" because the NCIC reports (which included "the firearms' serial numbers") had "sufficient indicia of reliability to support the probable accuracy of the fact that at least one of [defendant's] firearms was reported stolen" — and also ruling that the lower court "did not plainly err by failing to make explicit findings of fact regarding the reports' reliability" because (among other things) "NCIC reports are generally recognized as reliable, making the reliability of the evidence apparent from the record").  He tries to downplay these decisions by, for example, claiming they "contain[] virtually no analysis."  But for present purposes none of this matters:  given that we (spoiler alert) are about to rule against Fargas on waiver, we leave for another day (*without expressing our view*) the knotty question of the NCIC's reliability.

*Status Points*

Fargas writes that after his sentencing the federal sentencing commission retroactively amended the guidelines to "eliminate[] the two '[s]tatus [p]oints'" that elevated his criminal-history score. See USSG Supp. to App. C, Amend. 821 at 234-36 (Nov. 1, 2023); USSG Supp. to App. C, Amend. 825 at 260-61 (Nov. 1, 2023).[13] And he asks us to remand his case for resentencing under this amended provision. But "[t]he remedy for a defendant who seeks resentencing under a retroactive guideline[s] amendment is to file a motion in the district court." United States v. Jones, 778 F.3d 375, 390 (1st Cir. 2015). So we reject his invite without prejudice to his "right to file a motion in the district court seeking this relief." See id.

*Explanation*

Pushing a preserved argument, Fargas claims that the judge inadequately explained the upward variance — a type of issue

---

[13] The sentencing commission, by the way, is "a nonelected body within the judicial branch" that "continually update[s]" the guidelines to encourage "'better sentencing practices' and 'uniformity in the sentencing process.'" See United States v. Flores-González, 86 F.4th 399, 419, 423 n.13 (1st Cir. 2023) (equally divided en banc court) (Thompson, joined by Barron, C.J., and Montecalvo, J.) (quoting United States v. Booker, 543 U.S. 220, 263 (2005)), cert. denied, No. 23-7165, 2024 WL 4426725 (U.S. Oct. 7, 2024).

familiar to us from other sentencing cases (though one that's not always easy to resolve despite being familiar).

Some legal rules of thumb. A judge must explain "in open court the reasons for [the] imposition of [a] particular sentence." 18 U.S.C. § 3553(c). But the explanation's adequacy depends (unsurprisingly) on the case's complexity. See, e.g., Rita, 551 U.S. at 356 (observing that "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances"). The judge "should set forth enough to satisfy [us] that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." See id.; see also Gall, 552 U.S. at 50 (remarking that a judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation," Rita, 551 U.S. at 357 — an above-guidelines sentence (which we have here) requires more of an explanation than a within-guidelines sentence, for instance, see Gall, 552 U.S. at 50. And sometimes the "context and the record" clarify the reasons underlying the judge's decision. See Rita, 551 U.S. at 357, 359. Last (but hardly least), a judge using factors already included in a guidelines range to impose an outside-the-range sentence must

say what makes those factors worthy of extra weight.  See, e.g., United States v. Leach, 89 F.4th 189, 197 (1st Cir. 2023).

Now on to what Fargas's judge said.  Having read the key papers (Fargas's memo, probation's report, and Fargas's objections to that report), and having then heard counsel's concerns in person, the judge ruled that only an above-guidelines sentence could advance just punishment, deterrence, public protection, and respect for the law — each a § 3553(a) factor (see our footnote 3) "that help[s] guide" a judge's sentencing "discretion." See United States v. Tanco-Pizarro, 892 F.3d 472, 476 (1st Cir. 2018).  Noting that he knew "few weapons . . . more dangerous" than a machinegun, the judge tied his choice to case-specific matters — specifically stressing how Fargas possessed *2* machineguns (the modified Glock pistols), plus *1* AK-47 pistol, plus *1* drum magazine, plus *6* high-capacity magazines, plus *173* rounds of ammo (in different calibers) only "*three* months" after leaving prison on supervised release for *another* machinegun-possession crime (emphasis in quoted part ours).[14]

---

[14] Fargas (recall) began his supervised release for the earlier gun crime in November 2021 and committed the current gun crime in January 2022.  So it seems the judge got "three months" by counting November 2021 as month #1, December 2021 as month #2, and January 2022 as month #3.

A disappointed Fargas criticizes the judge for not saying why he based the above-guidelines sentence on factors — guns, ammo, and new crime done during supervised release — already (supposedly) included in the guidelines calculus. The criticism misses the mark, however. USSG § 2K2.1(a)(3) — which sets the base-offense level — contemplates possession of just *1* machinegun. USSG § 2K2.1(b)(1)(A) — which enhanced that level — contemplates a bunch of "firearms," *not* (as here) a bunch of machineguns. See United States v. Ortiz-Vidot, No. 20-1719, 2021 WL 5863422, at *3 (1st Cir. Dec. 10, 2021). And neither provision "account[s] for . . . substantial quantities of ammunition" or "multiple high-capacity magazines." See United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020); see also United States v. Díaz-Lugo, 963 F.3d 145, 156 (1st Cir. 2020) (affirming an above-guidelines sentence where the relevant guideline accounted for only 1 of defendant's 2 guns and none of his 4 high-capacity magazines).[15]

---

[15] Leaving no argument unturned, Fargas claims that because having a gun usually involves having bullets and magazines, it's fair to expect that a defendant in a typical illegal-gun possession case will have some ammo and magazines too. True enough. See United States v. Rivera-Berríos, 968 F.3d 130, 133, 135 (1st Cir. 2020) (holding that possessing 36 rounds of ammo and 2 high-capacity magazines "was entirely consistent with simple possession of a machine gun"). But case facts "may be deemed atypical, and therefore support an above-guideline[s] sentence, when a defendant possesses significantly more ammunition or magazines than in a typical case." United States v. Rosario-Merced, 109 F.4th 77, 83 (1st Cir. 2024). And while judges shouldn't pick sentences "just by counting bullets," see id., the problem for Fargas is that we've

- 21 -

On top of that USSG §§ 4A1.1(d) and 7B1.4(a) — which (respectively) added the criminal-history status points to Fargas's new-crime sentence and provided the range for his revocation sentence — don't account for his committing another gun crime so soon after his prison release, "facts [that] remove [his] case from the heartland of the applicable guideline[s] provisions." See Díaz-Lugo, 963 F.3d at 155.[16]

---

affirmed above-guidelines terms for defendants possessing *less* ammo than he possessed (that is, lower amounts sufficed for the upward variances), see United States v. Rivera-Santiago, 919 F.3d 82, 83, 85-86 (1st Cir. 2019) (ruling that possessing 127 rounds of ammo and 5 magazines (2 of which were high-capacity) "differentiate[d]" the defendant's crime from the typical "felon-in-possession offense contemplated by the guidelines"); see also Rosario-Merced, 109 F.4th at 84 (collecting similar cases). Fargas seems to wish the law were otherwise. But like all three-judge panels, we are bound by the law as it *is*. See, e.g., San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010).

[16] As for Fargas's claim that the judge gave "no explanation" for why the short time between the release and the new offense mattered, we say this. The judge focused laser-like on how Fargas did the same kind of crime as before just "three months" after his release. See United States v. Pedroza-Orengo, 817 F.3d 829, 834 (1st Cir. 2016) (affirming an above-guidelines sentence for a firearms crime where the judge "highlighted the fact that [the defendant] had committed the instant offense within a year of his release from incarceration for a prior firearms offense"). And the judge's comments came on the heels of his mentioning how the sentence must mirror the gravity of the crime plus support fair punishment, deterrence, public safety, and respect for the law — thus linking Fargas's case to sentencing's goals. See United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015) (ruling that "[w]here the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is sufficiently explained to pass muster under [§] 3553(c)" (quoting United States v. Fernández-Cabrera, 625 F.3d 48, 54 (1st Cir.

- 22 -

What we've said also distinguishes Fargas's case from cases like Rivera-Berríos. As "the driving force behind [an] upward variance," the judge there seemingly "relied on nothing beyond the mere fact that the offense of conviction involved a machine gun," see 968 F.3d at 135 — that is, he zeroed in on no "special characteristic attributable either to the offender or to the offense of conviction" that "remove[d]" the "case from the mine-run" of cases covered by the guidelines, see id. at 137. But by "consider[ing]" Fargas's "machinegun possession . . . *alongside other, case-specific factors*" — as the preceding two paragraphs show — the judge here avoided the kind of reversible error present there (despite Fargas's contrary view). See United States v. Polaco-Hance, 103 F.4th 95, 101 (1st Cir. 2024) (emphasis added); see also United States v. Carmona-Alomar, 109 F.4th 60, 75 (1st Cir. 2024).

2010))); see also United States v. Gonzalez-Flores, 988 F.3d 100, 102 (1st Cir. 2021) (holding that the defendant's "previous crimes" and "troubling patterns" — including "weapons involvement," for instance — indicate that "sentencing factors, like public protection and deterrence, point in favor of a longer sentence").

*Unsupported Speculation*

Moving on, Fargas (emphasis ours) brings up the judge's sentencing comment — made while discussing the seriousness of the crime — that

> [a]fter a short pursuit, Mr. Fargas put his arms out of the passenger side window and the vehicle came to a stop and Mr. Fargas stepped out of the vehicle, leaving his girlfriend, the two minors in the vehicle, with the weapons, the ammunition, and the magazines, *in what appears to be a veiled attempt not to be charged with firearms possession*.

According to Fargas, no "reliable record evidence" supports the judge's "veiled attempt" conclusion. But even assuming he preserved the issue, his argument fails because any error — if error there was (and we don't suggest there was) — is harmless. See, e.g., United States v. Tavares, 705 F.3d 4, 26-27 (1st Cir. 2013) (pointing out that "[a]n error is harmless if it 'did not affect the district court's selection of the sentence imposed'" (quoting Williams v. United States, 503 U.S. 193, 203 (1992))). The transcript shows that what propelled Fargas's sentence was his possessing 2 machineguns, 1 AK-47 pistol, and 173 rounds of different-caliber ammo mere months into a supervised-release term for an earlier machinegun-possession crime. If more were needed, the judge's written "statement of reasons" also jibes with his sentencing remarks. See United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (signaling that we can consider the judge's

- 24 -

"written statement of reasons" as part of our reasonableness review). This means the record doesn't indicate that the judge's veiled-attempt comment even "arguably affected the sentence." See United States v. Graham, 976 F.3d 59, 62 (1st Cir. 2020) (quoting United States v. Alphas, 785 F.3d 775, 780 (1st Cir. 2015)). Which is why we put this in the harmless category. See id.

*Disparity*

Fargas makes one last procedural-reasonableness challenge. Hyping another preserved argument, he insists that his 120-months above-guidelines sentence produced an unwarranted sentencing disparity compared with girlfriend Herrera's 37-months within-guidelines sentence (the need to sidestep unjustified sentencing disparities is a § 3553(a) concern (see our footnote 3)). As he tells it, the record "reveal[s]" no reason for treating him more harshly than Herrera. To get anywhere, he needs to present a true apples-to-apples comparison. See, e.g., United States v. Bedini, 861 F.3d 10, 21 (1st Cir. 2017). But this he can't do because, for example (and as the government notes without correction), Herrera "was subject to a lower applicable [g]uidelines sentencing range" than he was. See id.; see generally United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010) (underscoring that "[u]nless two '*identically situated* defendants' receive different sentences from the same judge, which may be a

reason for concern, our general rule of thumb is that a 'defendant is not entitled to a lighter sentence merely because his co-defendant[] received [a] lighter sentence[]'" (citation omitted and emphasis added) (quoting United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009))). Fargas — unlike Herrera — did his crimes while on supervised release (conceding at sentencing "that responsibility is different between defendants in this case," Fargas's counsel noted that Herrera is "a first offender"). See United States v. Cordero-Velázquez, No. 21-1956, 2024 WL 5198576, at *9 (1st Cir. Dec. 23, 2024) (holding that the co-defendants weren't proper comparators where (among other reasons) the appellant "was a prohibited person under the guidelines" — and so subject to a higher offense level — and his co-defendant wasn't). And despite what he seemingly believes, United States v. Robles-Alvarez, 874 F.3d 46 (1st Cir. 2017), doesn't help him, for a simple reason: because he and she aren't "fair congeners," see United States v. Rivera-Morales, 961 F.3d 1, 20 (1st Cir. 2020), he hasn't presented even a "potentially forceful" disparity argument that might require reversal, see id. (distinguishing — after quoting — Robles-Alvarez on a similar basis).

### Revocation Sentence

Fargas's opening brief *might* be read as trying to contest the procedural reasonableness of his revocation sentence as well,

seeing how in a few spots he blames the judge of not passably explaining the "*two* upwardly variant sentences" (emphasis ours). But he never develops those casual remarks, thus waiving any argument he might have had, see, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) — a point the government made in its answering brief, without any contradiction from Fargas in his reply brief.

## SUBSTANTIVE-REASONABLENESS CLAIMS

Last up is the substantive-reasonableness issue. For the legal novices out there, a sentence is substantively unreasonable if the judge acted too harshly given the "totality of the circumstances." See Gall, 552 U.S. at 51. But because there's more than one reasonable sentence in just about every case, reversal will result *only* if the term falls outside the vast "universe of reasonable sentencing outcomes." See United States v. Bermúdez-Meléndez, 827 F.3d 160, 167 (1st Cir. 2016); see also Tanco-Pizarro, 892 F.3d at 483 (explaining that a sentence is substantively reasonable if the judge's "reasoning is plausible and the result is defensible").

## New-Crime Sentence

Starting with the 120-months new-crime sentence, Fargas's preserved arguments basically mimic his just-rebuffed procedural-reasonableness claims (that the judge inadequately

explained the sentence, for example, and created an unwarranted disparity between Fargas's sentence and Herrera's).  But these claims fare no better repackaged as substantive-reasonableness issues.  See United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018) (rejecting substantive-reasonableness arguments that "essentially rehash [defendant's] already-rejected procedural-reasonableness claims"); see also United States v. Rodríguez-Torres, 939 F.3d 16, 43 (1st Cir. 2019) (similar).

### Revocation Sentence

As for the 24-months revocation sentence, Fargas's opening brief's "statement of the case" section says that he objected below to the "substantive reasonableness" of that term. But he waived any argument he might have had by not briefing the issue "in [his] brief's argument section." See Britto v. Prospect Chartercare SJHSRI, LLC, 909 F.3d 506, 514 (1st Cir. 2018); see also Bos. Exec. Helicopters, LLC v. Maguire, 45 F.4th 506, 520 (1st Cir. 2022).

### FINAL WORDS

We *affirm* Fargas's sentences, but *without prejudice* to his right to seek resentencing on the new crime under the guideline amendment discussed above.

- 28 -